UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

SEATIG, INC.,

                      Plaintiff,

       -v-

BIZLOG, LLC, *et al.*,

                     Defendants.

24-CV-7946 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Defendants BizLog, LLC, TripLog, Inc., and Advance Driver Technologies, LLC ("Advance") (collectively, "Defendants") move to dismiss Plaintiff Seatig, Inc.'s Second Amended Complaint ("SAC"). For the reasons that follow, Defendants' motion to dismiss the claims against TripLog and Advance for lack of personal jurisdiction is granted and Defendants' motion to dismiss the breach of contract claim against BizLog is denied.

**I.    Background**

    **A.    Factual Background**

The following factual allegations are taken from the SAC and presumed true for the purpose of resolving Defendants' motion to dismiss. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

Seatig is an outsourcing company that manages teams of employees whom it recruits, develops, and trains to provide software services and operations support to its clients. (ECF No. 29 ("SAC") ¶¶ 37, 38.) It is a New York corporation with its principal place of business in New York. (*Id.* ¶ 4.) BizLog, formerly known as eSocial, LLC, is a Washington limited liability company that produces software for mileage tracking and reimbursement. Its sole member, Tianji He, also known as Ted He, is a Washington citizen. (*Id.* ¶¶ 5, 12.) TripLog is a Delaware

corporation with its principal place of business in Washington. (*Id.* ¶ 6.) Advance is a Washington limited liability company whose sole member, He, is a Washington citizen. (*Id.* ¶ 7.)

In 2012, Seatig and BizLog (under the name eSocial, LLC) entered into a short-term agreement pursuant to which Seatig provided BizLog with employees (the "Seatig Employees") to create and develop three components of a mileage tracking technology called TripLog (the "TripLog Technology"): the TripLog iOS App, the TripLog Android App, and the TripLog Web Server. (*Id.* ¶¶ 15-16, 20.) The agreement did not include a non-solicitation clause. (ECF No. 34-6.) Seatig provided BizLog with three Seatig Employees: Li Shangshu, Zeng Shurui, and Liu Lei. (SAC ¶ 59.)

In 2015, Seatig and BizLog, again under the name eSocial, entered into a long-term Outsourcing Services Master Agreement (the "Agreement"), pursuant to which Seatig continued to employ and manage Seatig Employees for the purpose of developing the TripLog Technology. (*Id.* ¶¶ 22, 24.). The Agreement included a "Non-Solicitation Agreement" that prohibited "[BizLog] and its group members" from "hir[ing] as employees or for projects Seatig's or Seatig's group members' present or past employees, consultants, workers, or freelancers for up to 20 years after they have worked on projects for [BizLog] as Seatig Employees under this Agreement." (*Id.* ¶ 26 (quotation marks omitted).) As used in the Agreement, "[g]roup members refer to a party's subsidiaries or affiliated entities." (*Id.* (quotation marks omitted).)

The TripLog Technology was initially developed for individual use, but Seatig later developed an interface for trucking companies to track mileage, which He branded as OnLoad. (*Id.* ¶ 17.) BizLog captured revenue from the individual-based TripLog Technology whereas Advance, which was founded in 2019, captured revenue from OnLoad. (*Id.* ¶¶ 14, 18.) Revenue

from the individual-based TripLog Technology eventually went to TripLog once He registered it as a corporation. (*Id.* ¶ 18.)

In April and May of 2023, He sought to hire one of the Seatig Employees, Zeng. (*Id.* ¶ 60.) Seatig objected and Zeng returned to Seatig from June to July of 2023. (*Id.* ¶ 61.) In August of 2023, Defendants terminated the Agreement with Seatig and stated that the outsourcing structure with Seatig prevented its goals of full management and control. (*Id.* ¶¶ 62-63.) Defendants then "solicit[ed] and hir[ed] Li Shangshu, Zeng Shurui, and Liu Lei immediately after terminating the Agreement." (*Id.* ¶ 80.)

### B.      Procedural Background

Seatig commenced this suit against Defendants on October 18, 2024. (ECF No. 1.) After an order from this Court (ECF No. 7), Seatig filed a first amended complaint providing additional allegations as to subject matter jurisdiction (ECF No. 11). Defendants then filed a motion to dismiss the first amended complaint. (ECF No. 14.) Seatig subsequently filed the SAC, which asserts a breach of contract claim against all Defendants and a breach of the implied covenant of good faith and fair dealing against TripLog and Advance. (*See generally* SAC.)

Defendants filed a motion to dismiss the SAC (ECF No. 32) and a corresponding memorandum of law in support (ECF No. 33). Seatig opposed the motion to dismiss (ECF No. 51), and Defendants replied in further support (ECF No. 52).

## II.     Discussion

Defendants argue that Seatig's SAC must be dismissed because it fails to establish subject matter jurisdiction and personal jurisdiction, and because it fails to state a cause of action. "While Article III courts generally adhere to the principle 'that a federal court may not hypothesize subject-matter jurisdiction for the purposes of deciding the merits,' the Supreme Court in *Ruhrgas AG v. Marathon Oil Co.* declined to prescribe a strict mandatory 'sequencing

of jurisdictional issues.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 453-54 (S.D.N.Y. 2013) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)), *aff'd sub nom. In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148 (2d Cir. 2015). "Thus, there is 'no underlying jurisdictional hierarchy,' and a federal court may adjudicate personal jurisdiction before considering a challenge to subject matter jurisdiction." *Id.* at 454 (quoting *Ruhrgas AG*, 526 U.S. at 578). Because the Court ultimately dismisses all claims against TripLog and Advance for lack of personal jurisdiction, it considers personal jurisdiction before proceeding to subject matter jurisdiction and the merits.

### A.    Personal Jurisdiction

"Where, as here, a district court in adjudicating a Rule 12(b)(2) motion relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction." *Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 333 (S.D.N.Y. 2018) (cleaned up) (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)). "This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted). All pleadings are construed in the light most favorable to the plaintiff, with all doubts resolved in the plaintiff's favor. *Id.*

Under the terms of the Agreement, BizLog and Seatig consented to the jurisdiction of "any United States federal or New York state court that is located in New York County or Westchester County, New York." (ECF No. 34-1 ¶ 14.). Seatig relies on this consent as the basis for this Court's personal jurisdiction over all Defendants. (SAC ¶¶ 10-11.) Defendants challenge this Court's personal jurisdiction over all Defendants, but especially TripLog and Advance. (ECF No. 33 at 7-10.)

Typically, courts determining "whether the exercise of personal jurisdiction is proper in a diversity case . . . must conduct a two-part inquiry: first, the Court looks at whether there is a basis for personal jurisdiction under the laws of the forum state, and second, the Court must examine whether the exercise of personal jurisdiction comports with constitutional due process." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-00967, 2021 WL 918556, at *6 (S.D.N.Y. Mar. 10, 2021). However, "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). To determine the validity of a forum selection clause, courts ask (1) "whether the clause was reasonably communicated to the party resisting enforcement," (2) whether "the clause [is] mandatory or permissive," and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). If these conditions are met, the resisting party is bound unless it "has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust[.]'" *Id.* at 383-84 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). "[N]on-signatory status is not dispositive of the question of applicability of a forum clause to a plaintiff's claim." *Id.* at 391.

It is undisputed that BizLog signed the Agreement containing the mandatory forum selection clause and that the clause covers the claims at issue here. Nonetheless, Defendants argue that BizLog is not bound, not because the forum selection clause fails to meet one of the three *Phillips* conditions, but because the *entire* Agreement is void. (ECF No. 33 at 8, 21-22.). In particular, Defendants allege that the Agreement is illegal because Seatig lacks certain licenses to perform talent sourcing for other businesses, in violation of New York and Chinese law. (*Id.* at 21-22 (citing ECF No. 35 ¶¶ 7-9 and ECF No. 36 ¶ 7).)

Despite Defendants' arguments, BizLog is bound by the forum selection clause. "To challenge successfully a forum selection clause as void on the basis of illegality, the challenge must be directed against the forum selection clause itself, as opposed to the contract as a whole." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Seneca Family of Agencies*, 255 F. Supp. 3d 480, 488 (S.D.N.Y. 2017); *see id.* ("The failure to challenge the . . . Forum Selection Clause itself is fatal."). "This rule is based on the principle that a 'forum-selection clause is understood not merely as a contract provision, but as a distinct contract in and of itself—that is, an agreement between the parties to settle disputes in a particular forum—that is separate from the obligations the parties owe to each other under the remainder of the contract.'" *Miller-Rich v. Altum Pharms. Inc.*, No. 22-CV-03473, 2024 WL 1638637, at *8 (S.D.N.Y. Apr. 16, 2024) (quoting *Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000)); *see also Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1238 (11th Cir. 2011). Because Defendants fail to identify a defect specific to the forum selection clause, the clause is enforceable against BizLog.

Although BizLog is bound by the forum selection clause, TripLog and Advance did not sign the Agreement, and Defendants argue that the latter two Defendants therefore have not consented to this forum. In response, Seatig contends that TripLog and Advance are bound to the Agreement under the "closely related" doctrine. (ECF No. 51 at 15-16.) The Second Circuit has recognized that "a party [being] a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). Indeed, the Second Circuit "ha[s] permitted non-signatories to an agreement to be bound by . . . forum selection clauses where, under the circumstances, the non-signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound." *Fasano v. Li*, 47 F.4th 91, 103

6

(2d Cir. 2022). However, these cases applying the closely related doctrine did not consider the situation where "defendants object to the exercise of personal jurisdiction." *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 394 (S.D.N.Y. 2019). Instead, they involved dismissal on the grounds of improper venue and forum non conveniens. *See Fasano*, 47 F.4th at 100; *Aguas*, 585 F.3d at 699.

Recent opinions in this district persuasively articulate why it would be inappropriate to extend the closely related doctrine to the personal jurisdiction context. *See Koh v. Koo*, No. 22-CV-6639, 2023 WL 5352786, at *3 (S.D.N.Y. Aug. 21, 2023); *HSM Holdings, LLC*, 2021 WL 918556, at *9; *Arcadia Biosciences, Inc.*, 356 F. Supp. 3d at 394. To comport with federal constitutional principles embedded in the personal jurisdiction analysis, "a plaintiff must make a baseline showing that the defendant has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Arcadia Biosciences, Inc.*, 356 F. Supp 3d at 394 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Because of this due process requirement, "a forum-selection clause does not give rise to personal jurisdiction over a non-signatory unless the non-signatory is 'otherwise bound to the agreement, as for example under the ordinary law of successor liability and alter ego.'" *Koh*, 2023 WL 5352786, at *3 (quoting *HSM Holdings, LLC*, 2021 WL 918556, at *9).

Seatig fails to plausibly allege that Advance and TripLog are otherwise bound to the Agreement. The SAC cursorily alleges that TripLog and Advance "are third-party beneficiaries of the [Agreement], assignees of the agreement, closely related to Bizlog, and/or assumed the agreement," without furnishing facts supporting those bare assertions. (SAC ¶ 11.) "A complaint with only 'generalized and conclusory allegations,' which 'are essentially a recitation

7

of the legal standard,' is 'plainly insufficient.'" *Koh*, 2023 WL 5352786, at *2 (quoting *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014) (summary order)).

In briefing, Seatig attempts to bolster its arguments by alleging that TripLog and Advance are alter egos of BizLog. This theory of personal jurisdiction also fails. "Under New York law, a court may pierce the corporate veil for jurisdictional purposes when 'the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor.'" *Koh*, 2023 WL 5352786, at *2 (quoting *In re Vebeliunas*, 332 F.3d 85, 91-92 (2d Cir. 2003)). Determining whether it is appropriate to pierce the corporate veil requires consideration of various factors, including: "(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address, and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms' length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities." *Id*. Seatig relies on its allegations that He controlled all three Defendants, that Defendants all use and profit from TripLog Technology, that Defendants share overlapping business operations, and that the domains of TripLog and BizLog direct to the same website. (SAC ¶¶ 12-19.) However, these allegations merely suggest that the three companies are related and may coordinate with each other to some level—at most, Seatig has established some overlap in ownership, but it has utterly failed to demonstrate disregard of corporate formalities, inadequate capitalization, intermingling of funds, or any of the other

factors suggesting a total collapse of the corporate form. Seatig therefore has failed to plausibly allege that Advance and TripLog are alter egos of BizLog.

Seatig cannot establish that Advance and TripLog consented to the Agreement's forum selection clause. It also cannot establish personal jurisdiction under either New York's long-arm statute, N.Y. C.P.L.R. § 302(a), or federal due process. Indeed, the SAC is bereft of any allegations connecting TripLog and Advance to this forum, except for the fact that Seatig is based in New York. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is granted as to TripLog and Advance.

### B.    Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. "In reviewing a facial attack to the court's jurisdiction, [the Court] draw[s] all facts—which [are] assume[d] to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits attached thereto. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). This includes any documents incorporated by reference in the complaint. *Id*. If a Rule 12(b)(1) motion "place[s] jurisdictional facts in dispute . . . the district court properly consider[s] evidence outside the pleadings." *Id.*

The SAC alleges that this Court has jurisdiction under 28 U.S.C. § 1332, which requires complete diversity of the parties and an amount in controversy that exceeds $75,000. *See* 28 U.S.C. § 1332; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). (SAC ¶ 8.) There is no dispute here as to complete diversity: Seatig, the only plaintiff, is a New York corporation with its principal place of business in New York, and the defendants are a Delaware

corporation with its principal place of business in Washington and two limited liability companies whose sole member is a Washington citizen. (SAC ¶¶ 4-7.) Accordingly, complete diversity is satisfied. *See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). The SAC further alleges a reasonable probability that the amount in controversy exceeds $75,000. (*Id.* ¶ 8.) In particular, the SAC alleges that "one year of [Seatig's] profits over the employees that were hired by Defendants already exceeds that amount." (*Id.*) The SAC goes on to allege that the breach of contract caused Seatig "extensive irreparabl[e] injury, loss of goodwill, loss of revenue, harm to its business, and other injury and damages in an amount to be determined at trial but no less than $4,000,000." (*Id.* ¶ 81.)

"[I]n determining whether the amount-in-controversy requirement is met, the sum claimed by a plaintiff will control if it is made in good faith." *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 676 F. Supp. 3d 233, 244 (S.D.N.Y. 2023) (cleaned up). Where "[t]he SAC expressly claims damages . . . in excess of $75,000," dismissal is appropriate "only if there is 'a legal certainty from the SAC that [the plaintiff] cannot recover sufficient damages to invoke diversity jurisdiction.'" *Id.* (alterations adopted) (quoting *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982).

Seatig has alleged an amount in controversy exceeding $75,000, but Defendants argue that this allegation hinges on "speculative and hypothetical calculations" of Seatig's expected profits from the employees it lost to Defendants, when "there are no allegations that either the workers or any of Defendants were *required* to work with [Seatig] for any period of time." (ECF No. 33 at 6.) "These arguments, although plausible and potentially persuasive at a later stage of litigation, are unable to establish with 'legal certainty that plaintiff could not recover the amount alleged.'" *Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807, 818 (S.D.N.Y. 2019) (quoting

10

*Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)). Here, Seatig has made non-conclusory allegations as to damages it incurred in the form of lost revenue and goodwill, as well as and other injuries. At the motion to dismiss stage, these allegations "show by a reasonable probability that the amount-in-controversy requirement is satisfied," *Colavito*, 438 F.3d at 221 (quotation marks omitted), and Defendants have failed to show a "legal impossibility of recovery . . . so certain as virtually to negative the plaintiff's good faith in asserting the claim," *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quotation marks omitted).

Defendants also argue that, even if Seatig has satisfied the amount-in-controversy requirement against BizLog, it cannot use that same theory to justify subject matter jurisdiction against Advance and TripLog because BizLog is the only signatory to the Agreement. (ECF No. 33 at 6; ECF No. 52 at 5-7.). Because the Court concludes that Advance and TripLog should be dismissed for lack of personal jurisdiction, it need not resolve questions of subject matter jurisdiction specific to Advance and TripLog.

Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is denied with respect to BizLog.

### C. Failure to State a Claim

Defendants also contend that the SAC should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). "[T]he Supreme Court has established the following order to be followed in determining whether the pleading is adequate: 'When there are well-pleaded factual allegations, a court should assume their veracity and *then* determine whether they plausibly give rise to an entitlement to relief.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). "The court must also construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111. "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quotation marks omitted). "If a document integral to the complaint contradicts that complaint, the document controls, and the court need not accept the complaint's allegations as true." *Trustpilot Damages LLC v. Trustpilot, Inc.*, No. 21-CV-432, 2021 WL 2667029, at *3 (S.D.N.Y. June 29, 2021), *aff'd*, No. 21-2837-CV, 2022 WL 2124865 (2d Cir. June 13, 2022).

Because Advance and TripLog are dismissed for lack of personal jurisdiction, and because Seatig asserts the implied breach of covenant claim only against those two Defendants, the Court need only consider Defendants' Rule 12(b)(6) motion as to the breach of contract claim against BizLog.

The Agreement, which is incorporated by reference in the SAC, *DiFolco*, 622 F.3d at 111, calls for the application of New York substantive law (ECF No. 34-1 ¶ 14). Under New York law, a complaint asserting a breach of contract claim must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). Seatig alleges that the parties formed a contract when they signed the Agreement, that Seatig performed its obligations under the Agreement, that BizLog breached the contract by soliciting and hiring Seatig Employees, and that Seatig incurred damages as a result. (*See* SAC ¶¶ 68-81.)

Defendants primarily argue that the SAC fails to state a breach of contract claim because the Agreement's Non-Solicitation Provision is an unenforceable restrictive covenant. (ECF No. 33 at 11.) "In light of the 'powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood,' restrictive covenants are disfavored in New York and will be enforced only after careful analysis." *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 106 (2d Cir. 2024) (quoting *Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499 (1977)). "Under New York law, the enforceability of a restrictive covenant depends on whether the underlying contract is a contract for the sale of a business, an employment contract, or an ordinary commercial contract." *Express Freight Sys. Inc. v. YMB Enters. Inc.*, 623 F. Supp. 3d 39, 50 (E.D.N.Y. 2022) (citation omitted). Restrictive covenants "incidental to the sale of a business usually are enforced because the buyer has in part bargained for the good will of the seller's customers." *Steelite Int'l U.S.A., Inc. v. McManus*, No. 21-CV-2645, 2021 WL 1648025, at *5 (S.D.N.Y. Apr. 27, 2021) (quotation marks omitted). "On the other hand, restrictive covenants in employment cont[r]acts are 'strictly construed . . . .'" *Id.* (quoting *Crye Precision*

*LLC v. Bennettsville Printing*, 755 F. App'x 34, 36 (2d Cir. 2018) (summary order)). "Finally, restrictive covenants in ordinary commercial contracts are analyzed under a simple rule of reason, balancing the competing public policies in favor of robust competition and freedom to contract." *Id.* (quotation marks omitted).

Because the enforceability of a restrictive covenant often depends on the type of contract at issue, the parties hotly contest whether the Agreement is an employment contract or an ordinary commercial contract. (*See* ECF No. 33 at 12-13; ECF No. 51 at 19-21.) The Court need not resolve this dispute, however, because dismissal at this juncture would be inappropriate under even the stricter standard governing employment agreements.

A restrictive covenant in an employment contract "will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee." *JLM Couture*, 91 F.4th at 106 (quoting *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (1999)). Defendants contend that Seatig has no legitimate interest in barring them from hiring Seatig Employees who have worked on projects for Defendants in their Seatig capacity. Defendants further contend that the Non-Solicitation Provision unreasonably prohibits hiring Seatig Employees for *any* role, even if unrelated to work they completed for Defendants in their Seatig capacity, and for up to twenty years after such work has been completed.

Defendants argue that Seatig has no legitimate business interest because its employees' offered services are not unique or extraordinary. (ECF No. 33 at 13.) However, "New York courts typically do not require any novelty in the ex-employees['] services nor must any confidential or customer information be demonstrated before a restrictive covenant may be

enforced." *Leon M. Reimer & Co., P.C. v. Cipolla*, 929 F. Supp. 154, 158 (S.D.N.Y. 1996) (citing *Arthur Young & Co. v. Black*, 466 N.Y.S.2d 10 (1st Dept. 1983), *appeal dismissed*, 61 N.Y.2d 712 (1984)).  Instead, an "employer retains a legitimate interest in preventing former employees from exploiting the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment." *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 216-17 (S.D.N.Y. 2013) (cleaned up) (quoting *Scott, Stackrow & Co., C.P.A.'s, P.C. v. Skavina*, 780 N.Y.S.2d 675, 677 (3rd Dep't 2004)), *on reconsideration*, No. 11-CV-1675, 2014 WL 13109132 (S.D.N.Y. Apr. 14, 2014).  As alleged in the SAC, the Non-Solicitation Provision served to protect Seatig's goodwill, which the company established by "generat[ing] millions in profits for TripLog annually" over its decade-long relationship with Defendants.  (SAC ¶¶ 32, 64.)  And unlike restrictive covenants that have been rejected by New York courts, the Non-Solicitation Provision prohibits hiring only those Seatig Employees who had worked on projects for Defendants in their Seatig capacity.  *Cf., e.g.*, *Scott, Stackrow & Co.*, 780 N.Y.S.2d at 677; *BDO Seidman*, 93 N.Y.2d at 392-93.

That said, the capacious scope of the Non-Solicitation Provision does venture into dangerous territory.  The provision prohibits Defendants from hiring a covered Seatig Employee for any purpose, even if unrelated to the work they performed for Defendants as a Seatig Employee.  (ECF No. 34-1 ¶ 11.)  Furthermore, a twenty-year prohibition with no geographic constraint is an outlier compared to typically enforced restrictive covenants in the employer context.  *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 507 (S.D.N.Y. 2011) (noting that "courts have consistently held non-compete provisions of [a ten-year] duration unreasonable and, therefore, unenforceable"); *Todd Chem. Co. v. Di Stefano*, 292 N.Y.S.2d 811, 812 (2d Dep't 1968) (holding that a covenant with a temporal scope

exceeding ten years was unenforceable). However, "a covenant not to compete is not necessarily unenforceable merely because it lacks a geographic restriction." *Twitchell Tech. Prods., LLC v. Mechoshade Sys., LLC*, 208 N.Y.S.3d 657, 670 (2d Dep't 2024). Instead, "the reasonableness of a covenant not to compete with respect to geographic scope and temporal duration depends upon the facts of each case." *Id.*

It is the fact-bound nature of this analysis that requires the Court to deny the motion to dismiss the breach of contract claim against BizLog. "Because assessing the reasonableness of a restrictive covenant is such a fact-bound inquiry, courts ordinarily do not determine their enforceability on motions to dismiss." *Spotlight Ticket Mgmt., Inc. v. Daigle*, No. 23-CV-10035, 2024 WL 3966900, at *8 (S.D.N.Y. Aug. 28, 2024). Discovery may reveal that the scope of the Non-Solicitation Provision is properly tailored to protect Seatig's legitimate interest in preserving its goodwill, or it may confirm that the breadth of the Non-Solicitation Provision is unreasonable. But "[b]ecause the contract[] [Seatig] seeks to enforce [is] not *per se* unenforceable, it would be inappropriate to dismiss the action at this stage without affording the parties an opportunity to develop facts relevant to the reasonableness of the contracts and potential severability of overbroad portions." *Id.* at *10.

Moreover, the New York Court of Appeals has expressly held that even unreasonable restrictive covenants may be partially enforced. *BDO Seidman*, 93 N.Y.2d at 394. "[W]hen . . . the unenforceable portion is not an essential part of the agreed exchange, a court should conduct a case specific analysis, focusing on the conduct of the employer in imposing the terms of the agreement." *Id.* "Under this approach, if the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable

standards of fair dealing, partial enforcement may be justified[.]" *Id.* Partial enforcement may be appropriate, given the SAC's allegations that the Agreement was negotiated and agreed to between parties with equal bargaining power and absent any anti-competitive misconduct. (SAC ¶¶ 55-56.) But in any event, determining whether the agreement "is capable of partial enforcement" requires courts to "conduct a case specific analysis, which likely requires a more developed record than is available at th[e] [motion to dismiss] stage of the litigation." *See Twitchell Tech. Prods.*, 208 N.Y.S.3d at 671.

Defendants' remaining challenges to the breach of contract claim similarly fail. In a paragraph, they assert that the SAC "does not adequately allege the element of causation." (ECF No. 33 at 21.) "Under New York law, plaintiffs asserting breach of contract claims must allege facts showing damage caused by the alleged breach." *N. Shipping Funds I, L.L.C. v. Icon Cap. Corp.*, No. 12-CV-3584, 2013 WL 1500333, at *8 (S.D.N.Y. Apr. 12, 2013) (quotation marks omitted). Defendants contend that the SAC fails to allege that the Seatig Employees and BizLog would have continued their arrangement with Seatig but for BizLog's purported breach of the Agreement. However, the SAC alleges a twelve-year relationship between Seatig and BizLog that abruptly ended after BizLog tried to hire a Seatig Employee, and it expressly alleges that "Defendants conspired to terminate the contract in order to hire Seatig's Employees directly." (*Id.* ¶¶ 42, 60-65.) Given the alleged causal relationship between the purported breach and Defendants' termination of their contract with Seatig, the SAC sufficiently "allege[s] facts showing damage caused by the alleged breach" at the motion to dismiss stage. *N. Shipping Funds I*, 2013 WL 1500333, at *8 (quotation marks omitted).*

---

* Moreover, "even if [Seatig's] allegations of substantial damages were, as Defendants argue, too 'speculative' to support its claims, [Seatig] would have plausible claims for nominal damages." *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784

Lastly, Defendants argue that "it was illegal for Seatig to operate and perform under the parties' contract, which renders the contract *void ab initio*." (ECF No. 33 at 22.) In support of this contention, Defendants cite declarations attached to their motion to dismiss, which allege that Seatig does not have an Employment Agency License as required under New York law (ECF No. 35 ¶¶ 7-9) and that Seatig similarly lacks a Labor Dispatch Business License as required under Chinese law (ECF No. 36 ¶ 7). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111. The two declarations on which Defendants rely are neither attached to the complaint as exhibits, incorporated by reference in the complaint, nor integral to the complaint. Indeed, Defendants do not offer any reason why the Court should consider these declarations at the motion to dismiss stage. "The Court declines to convert Defendants' motion to dismiss into a motion for summary judgment, and, therefore, does not consider the declaration and exhibits provided by Defendants." *O'Neill v. Hernandez*, No. 08-CV-1689, 2009 WL 860647, at *1 n.2 (S.D.N.Y. Mar. 31, 2009).

## III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is GRANTED in part and DENIED in part.

The motion to dismiss is GRANTED with respect to Defendants TripLog and Advance for lack of personal jurisdiction. Seatig's claims against TripLog and Advance are dismissed without prejudice to refiling in a court that has jurisdiction over TripLog and Advance.

---

F.3d 78, 87 (2d Cir. 2015) (holding that district court erred in dismissing breach of contract claim).

Defendants' motion to dismiss is DENIED with respect to Seatig's breach of contract claim against BizLog.  BizLog shall file an answer to the SAC within 14 days after the date of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 32 and to terminate TripLog, Inc., and Advance Driver Technologies, LLC as parties.

SO ORDERED.

Dated: November 6, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge